[Civ. No. 25723.   Second Dist., Div. One.   Apr. 25, 1962.]

MICHAEL S. ALHANDY et al., Plaintiffs and Appellants, v. JOSEPH JOHN GENCHI et al., Defendants and Respondents.

Donald R. Mizener for Plaintiffs and Appellants.

Hastings, Blanchard & Hastings and Robert G. Blanchard for Defendants and Respondents.

WOOD, P. J.—In this unlawful detainer action, judgment was for defendants. Plaintiffs appeal from the judgment.

Plaintiffs, the owners of the store building and land involved herein, entered into a written lease of said premises with Mr. and Mrs. Gomory, as lessees, on April 6, 1955. The term of the lease was five years, commencing on May 1, 1955, and ending on April 30, 1960. The rental was $175 a month, payable on the first day of each month. A provision in the lease was as follows: "Lessor hereby grants an option to lessee before expiration of lease to renew said lease on same terms and conditions for an additional five (5) years." It was also provided therein: "Lessee agrees to pay first and last months' rent before May 1, 1955."

The last month's rent was paid as therein provided.

In September 1955, the lease was duly assigned to Mr. and Mrs. Taylor. On May 20, 1958, the Taylors duly assigned the lease to the defendants Mr. and Mrs. Genchi.

The defendants remained in possession of the premises and were in possession thereof on April 30, 1960, the date specified in the lease as the expiration date of the lease. They paid the rent of $175 a month for all months to and including April 1, 1960. They remained in possession after said expiration date (April 30, 1960) and paid to plaintiffs, and plaintiffs accepted, $175 a month thereafter (to date of trial in February 1961) as rent on said premises.

On October 10, 1960, plaintiffs served the lessees with a notice which stated that after November 12, 1960, the monthly rental for the premises would be $450 a month.

The amount of $175 which was paid as the last month's rent (i.e., for April 1960) was not credited as the rent for that month, and it was not paid to the lessees.

On November 14, 1960, plaintiffs served the lessees with a notice stating that the lessees were required within three days

to pay $337.15 due as the unpaid rent for the period from November 12, 1960, to December 12, 1960, or to deliver possession of the premises within three days.

This action was commenced on November 30, 1960.

Plaintiff Michael Alhandy testified: That he had never received any notice, written or oral, from the lessees that they wished to exercise the option to renew the lease. In the latter part of 1959, Mr. Genchi and the witness had a conversation concerning the difficulty of getting the parking lot at the corner. In the conversation, Mr. Genchi said he needed parking facilities, and if the corner lot could not be obtained by the witness, then Genchi probably could not remain in the store. He (witness) replied that the owner of the corner was not interested in selling it. In September 1960, when the witness went to the store for the rent, Genchi said he was interested in selling the store, and he asked ''how much time he would have on his lease or if he had a lease on the place.'' He (witness) replied that Genchi had not exercised the option and he had no lease. Thereafter they entered into negotiations for a new lease, and they reached a tentative oral agreement, but did not enter into another written lease. Genchi made payments of $175 a month after the expiration date of the lease, and he (witness) accepted the payments. The last month's rent (under the original lease) had been paid. He did not have any conversation with either of the defendants regarding the last month's rent. The reasonable rental value of the property is $250 a month.

Mrs. Alhandy testified: That she had no conversation with Mr. or Mrs. Genchi concerning the option before April 6, 1960. In September 1960, Mr. Genchi talked with her by telephone and asked if they ''could come to some agreement and lower the lease a little.'' She replied that she would talk to her husband about it. Thereafter Genchi came to the Alhandy home and they discussed a new lease. Genchi said that his lease had expired, but he did not know ''at the time'' that the lease had expired. He also said that he wanted to sell the store. They (lessors) figured they would let him stay there for the rest of the year at $175 a month. They did not enter into a written agreement.

Mr. Genchi testified: That he had made improvements at the premises while he was there, including air conditioning, new lights, and new equipment. In December 1959 he had a conversation with Alhandy about the store and the lease on the store. He asked Alhandy what was going to become of

the store (in the event Alhandy were absent). He replied that he owned the property and that his wife would be there, and the lease would go on, whether or not Alhandy was present; and that Genchi did not have anything to worry about. He (witness) said that it was in September 1960 that he first learned that there was any question about having a lease for five years. At that time, when Alhandy came for the rent, Genchi asked him how much more time he (Genchi) had left on the five-year option. Alhandy said, "What option?" Genchi said, "The five-year option I am working on." He replied that Genchi did not have a lease, that the lease expired in April. They had conversations thereafter regarding a new lease.

On cross-examination, Genchi said that in December 1959 he had told Alhandy that he needed parking facilities. The improvements were installed for his own use, without permission of the lessors, and that the improvements could be removed. In the December (1959) conversation they discussed the ownership of the property (whether Alhandy was the owner), and the option was not mentioned. He (witness) had a copy of the lease, but he had not read it. He said that when he "took the lease over," the persons from whom he bought it stated that they "took the place in October." He said that it was, therefore, his impression that the lease expired in September 1960, "rather than April."

It was stipulated that the testimony of Mrs. Genchi would be the same as the testimony of Mr. Genchi.

The court found, among other things, as follows: About the first day of each month since they went into possession of the premises, to the first day of February 1961, the defendants paid to plaintiffs and the plaintiffs accepted $175 as rent for the premises, which is the amount of monthly rental provided for in the lease; and in addition, the defendants paid to plaintiffs and the plaintiffs accepted and now hold $175, being a payment in advance as rental for the last month of the term of the lease. The term of the lease was for five years from May 1, 1955, to April 30, 1960; and the lease provided that defendants would have an option to renew the lease on the same terms for an additional term of five years. Within the time provided for the original term of the lease, the defendants exercised their option to renew the lease for an additional period of five years, and the lease was renewed for such term. The lease is in full force and effect according to its terms until April 30, 1965.

Appellants (plaintiffs) contend that the evidence was insufficient to show that any notice was given by the lessees prior to the expiration of the lease. They argue that such notice must be given and that mere retention of the premises by a lessee is not such notice; that mere holding over after the expiration of the lease gives rise to a presumption that the parties have renewed the hiring on the same terms and for the same length of time, not exceeding one month, if the rent was payable monthly, nor in any case one year. They argue further to the effect that the testimony, viewed in the light most favorable to respondents, shows that the reason they gave no notice was that they never read the lease and were under the impression that the lease expired five months later than the expiration date stated in the lease (i.e., September instead of April); that the lessees had improved the premises for their own benefit, but a substantial part of the improvements could be removed. Appellants also assert that since the lessees indicated that the premises would be valueless without the parking facilities, the lessors could only conclude that the lessees did not intend to remain; and that the parties entered into negotiations for a new lease, but six months after the lease expired the lessees notified the lessors that they did not choose to complete the negotiations, and they would exercise the option.

An express communication from the lessees to the lessors was not necessary in order to exercise the option. (*Tay-Holbrook, Inc.* v. *Tutt*, 218 Cal. 600 [24 P.2d 463].) In the case just cited, it was said at page 607: "We are not basing our opinion in this case entirely upon said checks and vouchers, but upon the entire course of conduct and the business dealings of the parties thereto, following the expiration of said original term." In the present case no specific method for exercising the option is stated in the lease. In *Cicinelli* v. *Iwasaki*, 170 Cal.App.2d 58, 67-68 [338 P.2d 1005], it was said: "And if the lease does not contain any provision as to the manner and time in which the option is to be exercised, the tenant may exercise the option before the expiration of the original term by an act or course of conduct indicating to the lessor his election to renew." In the present case, it is conceded that $175 was paid as the last month's rent, that the lessors retained that money in the course of the assignments of the lease, and that on April 1, 1960 (the last month of the original term of the lease), it was still held by the lessor; that all rental payments had been made to and

including March 1, 1960. It thus appears that if the lessors considered that April 1960 was the last month of the lease and that the lease would expire at the end of April, no rent payment was due on April 1, 1960—the last month's rent having been paid when the lease was made. It is conceded that the lessees paid, and the lessors accepted, $175 in April 1960 as the rent for that month. If the lessees and the lessors intended that the five-year lease term would expire at the end of April and that thereafter there would be a month-to-month tenancy, the lessees were not required to pay $175 as rental for the month of April. The lessors, by accepting the rent payment which was made in April and by retaining the last month's rent which had been paid in advance, indicated an intention to renew the lease. Also, the acts of the lessors in continuing to collect monthly rental of $175 during the next four months, while retaining the last month's deposit, indicated their belief or understanding that the lease had not expired.

In *Nicklis* v. *Nakano*, 118 Colo. 317 [195 P.2d 723], the last month's rent was paid in advance, and the lessor accepted rent for the last month of the original term while he retained the prepaid rent for that same month. Soon after the end of the original term therein, the lessor sought to deny that the lease had been renewed. In that case it was held that the course of conduct constituted a sufficient indication of the lessee's election to renew the lease. That Colorado case was cited with approval in *Cicinelli* v. *Iwasaki*, 170 Cal.App.2d 58, *supra*. It is to be noted in the present case that the lessors claim that the lease had expired was not made until five months after the end of the original term.

The evidence was sufficient to support the findings of the trial court.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.